I call our last case of this morning, United States v. Roebuck, No. 17-2718, Ms. Brill and Mr. Zosmer. Good morning, and may it please the Court. Alison Brill, Assistant Federal Public Defender, on behalf of Anthony Roebuck, who joins me in court today. And I'd like to reserve three minutes for rebuttal. Thank you. Certainly. The main issue in this case is whether Mr. Roebuck, who was convicted of a Class A felony, is subject to a five-year or lifetime term of supervision. Could you voice up just a tad? The main issue in this case is whether Mr. Roebuck, who was convicted of a Class A felony, is subject to a five-year or lifetime term of supervision after a court imposes post-revocation imprisonment. Revocation sentences are premised on the grading of the offense, and for this reason, Mr. Roebuck was only subject to a five-year term of post-revocation supervision. What section are you – what statutory provision are you relying upon? B or what? 2583H. And how – essentially, it sounds like you're arguing that B can limit the possible supervised release term to five years, but don't we base it on the offense? We do, and the reason that the Court is – the language shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release. The reason that the statute reads in that way is to prevent the Court from looking at the violation as the conduct that would cause the term of supervised release to be imposed. It's a constitutional avoidance in this case. But if it's there here, it refers then to 841, does it not? If it's the offense that resulted in the original term, it would be 841. And 3583 yields to 841, does it not? 8 – 3583 yields to 841 in the context of the original sentencing. The carve-outs, both in 3583, unless otherwise provided, and in 841, notwithstanding Section 3583, were specifically amended at the same time to apply to original sentences. There's no – there's no text – there's no similar carve-out in 3583H, and that textual difference is important because the post-revocation supervision context is different than the original sentencing context. I don't understand your argument. Is your argument that we are in B1 of 3583? Those are the terms of supervision that would be applicable here. Why is not 841 applicable? 841 is not applicable in the supervision – in the supervised release context. Well, when – when 3583H references the term of supervised release authorized by the statute for the offense that resulted in the original term, that is 841, is it not? Correct. He was convicted of a drug offense under 841. Okay. So why – why is that not the prevailing section that governs what supervised release he can be given at this point in time? Because supervised release in the context of post-revocation supervision is different than the original imposition of sentence. Okay. But H covers following revocation. Correct. And H doesn't have the carve-out for this distinction between 841 and 3583B in the original sentencing. So there's other provisions. 3583H must be read as a whole. And 3583H must be read in the context of the entire structure of the supervised release statute. First of all, a lifetime term of supervision is not contemplated by 3583, other than for – Well, neither is a five-year. Correct. But the five-year is part of the 3583 general supervised release. Under B1, except as otherwise provided. Yes. And so B1 absolutely applies to the original sentencing. The carve-out in B1 and 841 was not originally – was not intended to apply to this scenario. There's nothing in the legislative history that it was intended to be applied in this context. There's nothing in the legislative history that 841 defendants were meant to be subject to life terms of supervision with no limitation. What 3583H is clear about is that limitations were intended to be imposed. When Congress amended the statute to specifically permit post-revocation supervision, limitations were always there. We see that in the dependent clause of the same sentence that we're analyzing, which says less any term of imprisonment that's been previously imposed. In this case, because Mr. Roebuck was subject to the five-year term, the judge should have subtracted 33 months in the first instance and an additional 10 months in the second instance, which leads to a reasonable outcome, which is that he is subject to a tail of supervision, not an ongoing. But it would be, what, 33 months from life under 841? If 841 applied in the post-revocation context, then we would be talking about life minus 43 months. But under 3583H, wouldn't 841 apply? No. I believe that – Where's my answer? No, but if it was so clear that it applied, then the government would have said that at any time other than before this direct appeal, because Mr. Roebuck has already faced two revocation sentences each time where the government talked about five years. This court, as well, in Doe and Brady, also – although it wasn't – That was dictum. Yes, but the analysis was that the statute was not clear. The analysis was that the statute provided for five years, and these were all 841 defendants. But it wasn't anywhere near the issue in either of those cases. Absolutely not. But if we're talking about the – looking at the text and seeing if it's ambiguous or if the statute provides for two competing alternatives, then clearly this exact issue has been looked at over and over, and five years has been the term that's been recommended. Isn't your best argument that the imposition of a mandatory five-year term of supervised release is just incorrect? That is my best argument. And it doesn't take much discussion here because the record is clear that the judge was misinformed and ultimately made a decision based on that misinformation. In fact, the supervised release statute post-revocation provides no term, no recommended term, no statutory term, no at least five years. And the judge here was informed that it was recommended at least five years. Everything the judge was informed of was incorrect. But to – that question goes back to the original argument, which is that 841 doesn't apply in the post-revocation context because, of course, all the other provisions of 841 don't apply. There's no minimum. So whereas Mr. Roebuck was originally subject to a five-year mandatory minimum term of supervision, there's no mandatory minimum here. Where he was subject to a 10-to-life sentence, there's no recommended term of imprisonment either. So 841 doesn't apply in the post-revocation context. It's a discretionary, completely discretionary provision. The first sentence in the 3583H that we're discussing here says, When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on supervision. So although it's talking about a minimum term in that case, there's no minimum required. We know that 841 isn't completely at play as it was at the original sentencing, where clearly nothing else controls over 841. I want to hear from Mr. Zosmer, then we'll get you back on record. Good morning, Your Honor. May I please support Robert Zosmer on behalf of the government? I want to address Judge Ambrose's question about whether there was a mandatory term here. But to do that, I have to come at it from the first question that was presented, which is, you know, what is the maximum here? The bottom line is that the district court never said that there was a mandatory term of five years. It looks like people got confused. It says, of course, do both counsel agree that I, the recommended statutory max, is at least five years for supervised release. AUSA says, Your Honor, yes, there is a statutory max of five years. Then the court switched gears. At least five years, AUSA, at least five years for custody, and then there's at least five years for supervised release. So it's like in the course of a conversation, both sides got reversed. Well, it is confusing, and the reason for the confusion is actually this first issue regarding what is the maximum here. And just to put a tail on that, the government requested only two years of supervised release. Exactly. No one suggested ever. We're talking about maximum here, and that's where the confusion is. But no one ever suggested there was a mandatory minimum. And that's the argument that now the defense is making on appeal. And that would be an error. If the district court had said there's a five-year mandatory minimum. If the court thought it had to impose at least five years, that would sound like. I don't agree, Your Honor. And the reason we know that that was never advocated to the court is that the government itself only recommended a sentence of two years. And at the same time, the defense recommended a sentence of 90 days. So explain to me when the court says at least five years, AUSA, at least five years for custody, and then there's at least five years for supervised release. At least five years as a maximum. At least five years as a maximum doesn't sound like a maximum. This is getting to be Wittgensteinian. It is. And if I could try to break this down, it would just take me a couple minutes. The maximum on this initial issue that's presented, the maximum term of supervised release in a drug case that can be added to a revocation sentence is life. And that's because the statute says it's the maximum is the term that was originally permitted. We go to 35A3B. It says except as otherwise provided. Your Honor, Judge Ambrose, you wrote in the Sanchez-Gonzalez case, that means we go to 841. It's a maximum of life. The prosecutor at the hearing, I fully admit, the prosecutor was mistaken about this. She was under the impression of what's been advocated incorrectly today, that it was a five-year maximum and not a life maximum. Now, Ms. Patterson is an outstanding attorney. I've talked to her about this. She's on detail right now overseas, so I'm not trying to throw her under the bus. But the fact is no one raised the issue of what the maximum was. This is not something where you can look at a flashing red light that says it's a life maximum for supervised release in a drug case. You have to work your way through two or three statutes, and then it all becomes very clear. No one called on anybody to do that at this hearing. And so she just glanced at 3583B and said it's a five-year maximum for supervised release. That was wrong. It was a lifetime maximum. And, in fact, that mistake benefits the defendant. It gives a far lower maximum than actually exists. So the district court is asking, does everybody agree that the recommended statutory max is five years? And the prosecutor incorrectly says yes. And then the judge says at least five years, because he's heading in the right direction. It's not just a five-year statutory maximum. It's a life statutory maximum. And so everybody agrees. Defense says nothing. There's no objection there. And there is no error here. Because, again, if there is an error, it's the defendant's benefit in people thinking that the statutory maximum is five years instead of life. It's the same mistake that's made in the dictum, as Judge Randell referred to it, in the Doe case and the Plaw case from the 11th Circuit. There have been a number of cases in which the issue of the maximum is not squarely presented to the court. And so you just take a glance and you say, oh, it's 3583B. That's what happened in Doe. That's what happened in Plaw. It's not controlling because it didn't matter and the issue wasn't before the court. So there is a mistaken suggestion made by the government here, for which we apologize, with regard to the maximum. No one ever says you have a minimum, you must impose at least five years. And we know that, again, because the government recommends two years and the defense recommends 90 days. No one objected. If they mean something else, then we're in Alice in Wonderland territory. I mean, I don't. The judge was saying at least five years. I've got to do at least five years. Your Honor, I don't read that. The line there, this is page 212 of the appendix, of course. The recommended statutory max is at least five years for supervised release. That's what he says. He doesn't say minimum. He says maximum. And then he gives five years. At least should have been at most five years, right? Well, no, as it turns out, he's right when he says at least five years, because it's really life. And that we know clearly from walking our way through the statute. So there's an error here in the suggestion made by the government about the maximum. It's beneficial to the defendant. And it turns out it doesn't matter. The government then recommends two years, clearly acknowledging that there's no minimum, mandatory sentence. And the judge then gives a host of reasons that he wants it to be five years, mainly to assure that there's plenty of time to assure Mr. Roebuck's rehabilitation. So at the end of the day, there's no error. Now, of course, we're in plain error territory, because there's no objection that's made here to any of this. But there is no error at all. But hasn't the Supreme Court said that when you somehow miscalculate, that affects substantial rights? So if you're doing plain error review, is there an error? Is it plain? Does it affect substantial rights and affect the integrity of the system? This would certainly affect substantial rights, would it not? If there were a mistaken statement regarding a mandatory minimum, which there wasn't. As far as what the Supreme Court has recently clarified, we're talking there about the fourth prong of plain error review. But first, you've got to have an error. And you have to have an error that's plain, and an error that there's a reasonable probability it affected the result. And then the Supreme Court does say, if you have an error. If you have an error, this affects substantial rights. Am I wrong? Right. If you have an error in the sentencing calculation, we now know for a fact, and this court had said it in advance, that that affects substantial rights. But we don't have an error here. The error that's being advocated to this court is that the district court somehow said, I must impose at least five years supervised release. I have a minimum here. I have a mandatory minimum. It's not here. It's not on page 212. It's not anywhere else. The court says the max is at least five years. Fact is, the max is life. So if the judge is saying anything wrong, he's saying it to the defendant's benefit. If we're confused and think we ought to send it back, how would that proceed? Well, I would hope the court is not confused. I'm doing my best to explain what happened. But if the court is and believes that there should be a remand, then we'll go back and we'll lay it out very clearly. We will tell the judge clearly, you can impose up to lifetime supervised release as a tail after the revocation sentence. We don't think there should be lifetime supervised release in this case. We'll advocate two years again, and I imagine the judge will give five years again because he gave very cogent reasons for doing that. Now, of course, we're on plain error review, Your Honor, so that means if we're faithful to that, the defendant here has the burden to show a reasonable probability that the district judge, despite all the reasons it gave, will give something less than five years, and I don't think they could make out that burden. I'm sure Ms. Brill will tell us why. I'm sure she will, and she's very capable. But I think in this case it's pretty clear that the confusion about the maximum doesn't affect anything. But I have to respectfully disagree with my friend Ms. Brill on reading this record and saying that he thought there was a mandatory minimum because there's just nothing here that supports that. Nothing that supports that? No, Your Honor. I mean, the word max is used over and over. That's not a mandatory minimum, and how can anyone say that the government – It starts off that way, but, I mean, it's like somebody – it happens every day in conversation. People get confused by something that's said. Almost everybody in this courtroom has had it happen sometime in the last few weeks. It's just the way it is, and it was an error, a misstatement by the court, and the AUSA didn't correct it. In fact, restated what the court has said, at least five years. You're right. Maybe, maybe, you know, you should have said something like, well, at least five years because you really tie it to 841, but that's not what was said. Your Honor, I can't read page 212 any better than you can, and, of course, it's Your Honor's decision here. But the court says the recommended statutory max is at least five years for supervised release. Ms. Patterson says, Your Honor, yes, there's a statutory max of five years. And the court says at least five years. And Ms. Patterson says at least five years for custody, and then there's at least five years for supervised release. And then the court says, okay, counsel, referring to defense counsel, who says, yes, Your Honor. I don't see the confusion. They're trying to nail down what the statutory maximum is. But do you think the district court had in its mind that it could impose less than five years? Well, it certainly should have, given that the parties are standing there recommending both of them are recommending less. Could have, would have, should have, don't do it. Well, I think here it does. I mean, it would be pretty odd for a district court to believe that it has to impose at least five years, discussing the maximum with the prosecutor, the same prosecutor who is saying give two years. They're not talking about a minimum here. It's obvious from that exchange. They're talking about the maximum. The government says it wrong, to the defendant's benefit. The district court starts heading in the right direction by saying at least five years. We're beating the source up. We are. And I leave it to the court's determination. But I do think the record is fairly clear. And certainly there's no demonstration of plain error. Thank you very much. Ms. Brill. Just to begin by following up on what you just said, Judge Ambrose, maybe the judge meant at least five years because you tie it to 841. The decision to impose post-revocation supervision is not tied to 841. It's completely discretionary. There is no minimum. I was just taking a wild stab at something. Okay. Sorry. But the fact that 841 isn't completely tied to post-revocation supervision is an important point because it doesn't completely correlate the way that Sanchez-Gonzalez said that 841 never yields. It does yield in the context of post-revocation supervision. The discussion that my colleague was making about the minimum and maximum terms doesn't answer the question if it was discretionary or mandatory, the decision that the district court made with regard to the five-year term of supervised release. It's clear from the language that at least it means that the judge believed that there was no discretion to go under five years. So can we take into account the reasons why he gave for his sentence? Can you take into account? Sure. This court permits the revocation decision on imprisonment and supervision to be included in the same statement of reasons. Does that make it harder for you to make your argument that he was mistaken? Your question answers two issues that I'd like to raise in this rebuttal, which is that there are no limitations. If we're saying that the lifetime term of supervision is applicable here, then there is really no way to ever argue against what the judge is imposing on 841 defendants. Any term could be reasonable. There's really no way to appeal a sentence of post-revocation supervision when there's no guidelines recommended, there's no legislative history suggesting it. The typical limitations we would set when there's really no limitations here, the statute creates multiple limitations outside of the 841 context and the general supervised release context for what would be a reasonable term of post-revocation supervision. There's the tale that this court discussed in United States v. Williams, which is at some point supervised release ends and the possibility of post-revocation imprisonment ends. There's a limitation of general sentencing practices when we have some structure. We know that we would get to procedural reasonableness by first looking at whether the court correctly applied the guidelines. There's no guidelines here. It's completely discretionary. And so the fact that the government's proposition sets forth no limitations, and we're talking about a statute that if you just take a glance, as the government said, maybe it does look like Mr. Roebuck's reading of it would be accurate. Then we're into other rules of statutory interpretation, which is that the rule of lenity would apply, which is that the rule against superfluity would apply because we're taking out part of the dependent clause in the statute. That would apply the argument against absurd results, which is that we would be permitting endless cycles of revocation, particularly for defendants who are sentenced after 2003, who are subject to the maximum term of imprisonment every time with no limitation on it. So I ask this court to, before deciding that the government's reading is the only reading, to think about the consequences for one-third of all criminal defendants if this court imposes that sentence. If I just may read Justice Kennedy's concurrence in Johnson 2000, which is the interpretation of 3583E3. He says, faced with a choice between two difficult readings of what all must admit is not optimal statutory text, the court is correct to adopt the interpretation that makes the most sense. I ask this court to adopt the interpretation that makes the most sense. Thank you very much. Thank you to both counsel for very well presented arguments. And we'll take the matter under advisement.